## Ross, School Fund Com. *v.* HATCH, County Treasurer.

County treasurers are only required to exercise reasonable diligence and care in the preservation and disposal of the public money.

Where a county treasurer shows that he has used reasonable diligence and care in the preservation of the public funds, and that, notwithstanding such care, the public money has been stolen, he is not liable for the amount thus stolen.

The duties and responsibility of a county treasurer, are fixed by his official bond; and from it, the measure of liability incurred by him in the preservation and disposal of the money received by him as treasurer, is to be ascertained and determined.

Where in an action against a county treasurer, on his official bond, by a school fund commissioner, for money which defendant had received and failed to pay over, the defendant answered, admitting the receipt of the money, and the failure to pay, and alleging as an excuse for such failure, that the money was stolen from the treasury of the county, without any want of reasonable care and diligence on the part of said defendant, in the care and preservation of the said money, so that the same was entirely lost to the treasury of said county, and no part thereof has ever been restored, which answer was demurred to, and the demurrer overruled; *Held,* That the demurrer was properly overruled.

*Appeal from the Alamakee District Court.*

THURSDAY, SEPTEMBER 10.

Suit to recover the sum of $202 of the moneys of the School Fund of Alamakee county, which defendant had received as treasurer of said county, and failed to pay over to plaintiff, as School Fund Commissioner. The answer admitted the receipt of the money, and the failure to pay the same to plaintiff, as required by law, and alleged as excuse for such failure, that, after defendant had received the money, "it was stolen from the treasury of said county, without any want of reasonable care and diligence on the part of said defendant, in the care and preservation of said sum of money, so that the same was entirely lost to the treasury of said county, and no part thereof has ever been restored." A demurrer to this an-

swer was overruled by the Court, to which plaintiff excepts, and appeals to this Court.

*John T. Clark*, for the appellant.

*W. T. Barker*, for the appellee.

STOCKTON, J.—The bond of the defendant as treasurer, is payable to the county of Alamakee, and suit is brought upon it, in the name of the plaintiff, as School Fund Commissioner, by virtue of the provisions of the Code, sections 1693 and 2146, 249, 297. It is further to be observed, that the suit is against defendant, alone, as treasurer, and not against his sureties. The question raised by the demurrer is, whether the defendant is excused from his liability to pay over the money received by him for the School Fund, by the fact that it was stolen from him, without his fault. The breach is assigned upon that clause of the bond, in which defendant undertakes " to pay over promptly to the person or officer entitled thereto, all money which may come into his hands by virtue of his office."

The exemption from liability claimed by defendant, is based upon another clause of the bond, in which the undertaking is, that " he will exercise all reasonable dilligence and care in the preservation and lawful disposal of all money, books, papers, securities and other property appertaining to his said office." It is claimed for defendant, that neither by the well settled rules of law, nor by the terms of his official bond, is he liable for school money received by him as treasurer, and stolen from his office, without any want of reasonable dilligence and care on his part, in the preservation of the same. The law requires the county treasurer to keep a separate account of the several taxes for state, county, school and road purposes, received by him, and to open an account between himself and these several funds, charging himself with the amount of the tax, and crediting himself with the amount paid over, and with the delinquent tax, when authorized so to do. Code, section 156.

He is also required to pay to the school fund commissioner, on the 10th of February of each year, the amount of the school tax by him collected; and should he fail at any time to pay over the same as by law required, he shall forfeit the sum of fifty dollars and double damages, to be collected on his official bond. Code, sections 1153, 1154.

From the provisions of the code, a very plausible argument is drawn, that the treasurer is liable at all events for the funds in his hands, and that no degree of care or dilligence in their preservation, will excuse him, if the money is lost or stolen. It is claimed that when the treasurer receives the money on the tax list, an absolute debt to the school fund is created, and not a technical bailment. The responsibility is likened to that of a bank receiving the money of its customers on deposit, for which, though it may be lost without the fault of the bank, it is liable to the depositor. See *Commercial Bank of Albany* v. *Hughes*, 17 Wend., 100; *Muzzy* v. *Shattuck*, 1 Denio, 233; *Supervisors of Albany* v. *Door*, 7 Hill, 584, note; *United States* v. *Prescott*, 3 Howard, 578.

The duties and responsibilities of the defendant are, however, fixed by his official bond, and from it the measure of liability incurred by him in the preservation and disposal of the money received by him as treasurer, is to be ascertained and determined. The condition of the bond is, that he will exercise " reasonable dilligence and care." When he has done this much, he is not liable on his bond for any loss of the money, occurring by theft or casualty. No conclusion establishing the relation of debtor and creditor between the parties, or creating a greater liability than is imposed by the bond, can be drawn from the provisions of the statute cited above. The State, in prescribing the condition of treasurers' bonds, has determined the nature and extent of the obligation to be assumed by him. This condition should have been framed in different words, if it was designed by the legislature, to make him an insurer of the public funds coming into his hands. Nor is it clear, that the salary allowed to the treasurer, is given to him as

a compensation for the risk incurred by him in the custody of the public funds. In *Whitfield* v. *Le Despencer*, Cowper, 765, it was held by Lord Mansfield and the Court of King's Bench, that in a matter of revenue and police, under the authority of an act of parliament, the salary annexed to the office, is for no other consideration than the trouble of executing it.

The question as to the measure of the liability of public officers, having the charge and custody of money and property by virtue of their office, has arisen and been decided in a large number of cases, both in England and the United States. It has been held that a sheriff levying upon goods, must use due diligence to keep them safely to satisfy the execution. But he is not an insurer, and is not, like a common carrier, answerable for a loss of the goods by fire. His capacity as an officer, is not considered as fixing a more rigorous measure of liability upon him, than if he were a private person. In respect to other public officers, as county treasurers, receivers, postmasters and revenue officers, the rule has been held to be more stringent, and the general liability of persons having charge of money or property by virtue of a public office, has been placed by Mr. Justice STORY, on the same footing as that of bailees for hire. Story on Bailments, section 130, 620; Edwards on Bailments, 59; *Browning* v. *Hamford*, 5 Hill, 591. The case last named, (*Browning* v. *Hamford,*) was an action against a sheriff, for failure to make the amount of an execution in favor of the plaintiff. The defence was, that the goods levied on to satisfy the execution, were casually consumed by fire, with the building in which they were stored. The Supreme Court of New York held, that the sheriff was not an insurer of goods seized under execution, though he is answerable, if they be lost, either through his own negligence, or that of others intrusted by him with their custody. The same doctrine is assumed as applicable to goods held by a sheriff under attachment. *Jenner* v. *Joliffe*, 6 Johnson, 12. The liability assumed by a receiptor for goods, levied

upon and taken possession of by an officer, and delivered to the receiptor on his undertaking to re-deliver them when called for, is held to be that of a naked bailee, and he is answerable for gross negligence only. *Brown* v. *Cook*, 9 Johnson, 361; *Dillenbach* v. *Jerome*, 7 Cowen, 294; Edwards on Bailments, 59.

In *Whitfield* v. *Le Despencer*, *supra*, Lord Mansfield and the Court of King's Bench held, that the case of the postmaster general was in no circumstance whatever, similar to that of a common carrier; and that he was not liable for the value of a bank note stolen from a letter, by one of the sorters of letters in the Post Office, but he is, like all other public officers, as commisioners of the treasury, of customs and excise, who were never thought liable for any negligence or misconduct of the inferior officers in the several departments.

In *Burke* v. *Trevitt*, 1 Mason, 96, STORY, Justice, held, that, in Admiralty, a captor is not held responsible for theft, unless there lies against him the imputation of personal negligence, and a seizing officer is not responsible for a loss of goods happening while they are under the custody of the law. The goods in this case, had been stolen, after the revenue officers had left the vessel, and after the marshal had taken possession of her, without, however, claiming any right to the goods.

In the case of *The Supervisors of Albany County* v. *Dorr*, 25 Wendell, 440, which was a suit on a treasurer's bond, the breach alleged was, that the defendant had not paid over the moneys which had come to his hands as county treasurer. Defendant pleaded that the identical moneys received by him as treasurer, had been stolen from his office, without any negligence, want of due care, or other blame or fault on his part. On demurrer to the plea, the Supreme Court of New York, NELSON, C. J., held, that the treasurer was not liable for the moneys so stolen from his office; or in other words, that an officer, charged with the receipt and disbursement of public funds, is not an insurer of the same, while they remain

necessarily in his custody. The case was affirmed by the Court of Errors, (7 Hill, 583.) As the Judges were equally divided in opinion, twelve being for affirmance, and twelve for reversal, it is claimed that the affirmance did not settle the question of law, and has no binding force as a precedent.

The law was ruled differently in *Muzzy* v. *Shattuck*, 1 Denio, 255, by the Supreme Court of the same State, and the case was affirmed unanimously by the court for the correction of errors. It was an action on the official bond of a town collector, which was conditioned for the faithful execution of the duties of his office. The breach assigned was, that the defendant had neglected to pay over moneys collected by him. The plea was, that the moneys were feloniously stolen, taken and carried away from the dwelling of defendant, by some person unknown, who broke into said dwelling in the night time, for that purpose; and that said moneys were so stolen, without any fault, want of care, or omission of duty, on the part of defendant, and by means whereof he had become unable to pay or account for the same. A demurrer to the plea was sustained by the Court. The Supreme Court (JEWETT, J.,) says: "I cannot assent to the proposition, that the liability of the collector is limited by the common law rule applicable to the ordinary case of misfeasance or neglect in the discharge of the duties of office, by a public officer. The provisions of the statute seem to recognize the collector of taxes, in the light of a debtor for the amount of taxes directed to be collected, and to provide the manner in which that obligation is discharged. The statute imposes a definite liability on the collector and his sureties, for the omission to collect and pay; and whether that omission is the result of misfeasance, or neglect, unavoidable accidents, or felony committed by another, I do not think it furnishes any defence to the action." This decision was based on the statute of New York, which fixed the liability of the collector. The condition of the bond, was entirely differ-

ent from that given by a county treasurer under our Code. He is bound by it, " faithfully to execute the duties of his office," and these duties are prescribed by law. The court says, (page 238) : " Nothing short of · a credit or payment amounts to a performance of the condition of the bond. And that this is the true construction of the condition of the bond, is evident from the various provisions òf the statute."

A similar decision has been made by the Supreme Court of the United States, in the case of *The United States* v. *Prescott*, 3 Howard, 578. The defendant was receiver of public moneys at Chicago, Illinois. The condition of the bond was, that he should " truly and faithfully continue to execute the duties of his office—and should well, truly and faithfully, keep safely, without loaning or using, all the public moneys collected by him, until ordered to transfer or pay out the same; and when so ordered, should faithfully and promptly transfer or pay out the same." The breach assigned, was his failure to transfer the public moneys as directed. The plea was, that while the moneys were in his possession, they were feloniously stolen from him, although he had used ordinary care and diligence in the safe keeping of the same. On demurrer to this plea, it was held by the Court, (McLean, J.) that this was not a case of bailment, and that the law of bailments does not apply to it; that the liability of defendant arises out of his official bond and principles founded on public policy; that the condition of the bond was broken, when defendant failed to pay over the money received by him, when required to do so; and that he was not exonerated by the fact that the money had been stolen from him. The court farther says : "Public policy requires that every depository of the public money, should be held to a strict accountability ; not only that he should exercise the highest degree of · vigilancè, but that 'he should keep safely' the moneys which come to his hands. Any relaxation of this condition, would open a door to frauds, which might be practiced with impunity. A de-

pository would have nothing more to do, than to lay his plans and arrange his proofs, so as to establish his loss, without *laches* on his part. Let such a principle be applied to our postmasters, collectors of customs, receivers of public moneys, and others who receive more or less of the public funds, and what losses might be anticipated by the public. No such principle has been recognized or admitted as a legal defence."

While we admit the full force of the reasoning of the court, on the grounds of public policy, it will be seen that the decision is based on the condition of the bond of defendant, in which he undertakes "to safely keep" the public funds in his hands. There was no such provision or condition in the bond of the collector at Chicago ,as is prescribed by our statute for the bonds of the county treasurer. His duties were in no sense limited to the exercise of "reasonable dilligence and care in the preservation and lawful disposal of the moneys appertaining to his office." On the other hand, as the court says, having undertaken to safely keep the public moneys, he received the office with a full knowledge of its responsibilities, and cannot in case of loss, complain of hardship. The case of the county treasurer is different. The state has not seen proper to require of him, more than reasonable diligence and care in the preservation and disposal of the public funds; and when he shows that he has exercised this diligence and care, and that the moneys have been stolen from him, notwithstanding, he is discharged from all liability. We conclude, therefore, that the District Court did not err in overruling the demurrer to the defendant's answer, and the judgment will be affirmed.

Judgment affirmed.