# CHARLESTON.

EDWARD W. WOMACK *et al.* v. L. C. AGEE.

Submitted October 10, 1916.   Decided October 17, 1916.

1. VENDOR AND PURCHASER—*Nature of Contract—Option of Sale.*
   A written contract reciting the execution of a promissory note as consideration for the sale of land and giving the maker thereof the option to pay the note at maturity or off-set it by a conveyance of other land, evidences a sale of the land of the promisee, not an exchange of lands, and constitutes a mere option of sale of the land of the promisor. (p. 24).

2. SAME—*Option—Time Limit.*
   The time limit upon the option, in such case, is the date of the maturity of the note. (p. 26).

3. SAME—*Option—Duration.*
   Failure of the vendor to deliver or tender his deed on or before the expiration of the option, works an extension of the option, and the right to exercise it continues until such deed is tendered. (p. 27).

4. SAME.
   . The existence of liens on the property of the vendor, without provision for their release, in case of the vendee's election to convey his lot instead of paying the money, is likewise an obstruction of the right of the latter, extending the life of the option. (p. 27).

5.  ABSTRACTS OF TITLE—*Requisites—Verification.*
    An abstract of a title completely evidenced by muniments of
    record need not be verified by an affidavit.   (p. 30).                    (

Appeal from Circuit Court, McDowell County.

Bill in equity by Edward W. Womack and others against
L. C. Agee.   From a decree for plaintiffs, defendant appeals.

*Reversed and remanded, with directions.*

*Strother, Taylor & Taylor,* and *E. C. Marshall,* for appellant.

*Litz & Harman,* for appellees.

POFFENBARGER, JUDGE:

This appeal is from a decree enforcing specific performance of a contract of sale of a lot in the town of Welch, in one of the two ways prescribed by the contract, in accordance with the preference of the vendors.   The vendee and appellant preferred to perform it agreeably to the other method, and complains principally because this preference was denied him.   As the contract was in writing, there is no dispute as to its terms, but the parties do not agree upon its interpretation.   The purchase price of the lot was $1,500.00, and the vendee executed to the vendors his two negotiable promissory notes, one for the sum of $500.00, and the other for $1,000.00. The notes and the contract bear the same date, Jan. 2, 1913. The $500.00 note was paid at maturity.   The contract, however, left it optional with the vendee to pay the $1,000.00 note at the date of its maturity, May 2, 1913, or, in lieu of payment, to convey to the plaintiffs, by general warranty deed, a certain lot in the subdivision of the city of Huntington, known as Westmoreland, and furnish an abstract of the title thereof.   Both notes were left with the First National Bank of Welch, the first one for collection and the second for collection also, unless the vendee should convey the Westmoreland lot, in lieu of payment.

The $1,000.00 note not having been paid at its maturity nor the Westmoreland lot conveyed, and the vendee of the Welch lot, maker of the note, being a non-resident, the vendors instituted this suit in equity, in August 1913, to enforce pay-

ment thereof, and, at the same time, caused an attachment to be issued and levied upon the defendant's interest in the lot the plaintiffs had sold him, and on the purchase money of which he had paid the sum of $500.00, as above stated. In Oct. 1913, the defendant filed his demurrer and answer, setting up, in the latter, the contract of purchase, non-compliance therewith on the part of the plaintiffs, encumbrances on the lot and his own readiness and ability to comply with the terms and provisions of the contract, and praying annullment thereof, cancellation of the $1,000.00 note and a decree in his favor for repayment of the $500.00. To this answer the plaintiffs filed a special reply denying delivery or tender of a deed for the Westmoreland lot, at or before maturity of the note, right of the defendant to exercise his option after that date and inability of the plaintiffs to make a good title to the lot in the town of Welch. They also averred non-compliance with the provision of the contract, requiring delivery of an abstract of title to the Westmoreland lot.

The decree entered by the court required the defendant to pay to the plaintiffs the $1,000.00 note and the interest thereon, permits him, on payment of said sum, to withdraw from the papers of the cause, the deed for the Welch lot, executed and lodged therein by the plaintiffs, and, in default of payment, orders the lot to be sold.

The materiality of the matters to which the conflicting testimony relates, the time of the tender of the deed for the Westmoreland lot, with reference to the maturity of the note, the character of that deed and tender of an abstract of title, depends upon the interpretation of the contract, as to essentiality of the time of performance. Denying a tender of performance at or before the maturity of the note, the plaintiffs insist that the defendant had no option or right of election as to the mode of performance after that time. On the other hand, he insists that he tendered performance before the note became due, and also, that he had right to elect and perform within a reasonable time after the maturity of the note, upon the theory that the contract did not make the time of performance essential.

The optional provision of the contract reads as follows:

"The note for One Thousand Dollars to be paid at the option of the party of the second part, at maturity, or to be offset by delivering a general warranty deed, with abstract of title, for a certain lot situate and being in the subdivision of Westmoreland to the *Town of Huntington*, West Virginia, the lot being more fully and particularly described as follows: 'Lot No. 8 in Block B, in said Westmoreland subdivision.' Deed for said lot to be delivered to the First National Bank of Welch, Welch, West Virginia."

Nothing in the terms of this provision purports a sale of the Westmoreland lot. On the contrary, it shows that a note was given, containing a promise to pay money, and that the defendant was accorded the mere privilege of conveying the lot in lieu of payment. Nowhere in the contract, is there any language that could possibly be construed as effecting a sale of the Westmoreland lot. Nor can the instrument be read as a contract of exchange of property. Following the above quotation setting forth the optional provision, there is a recital that the two notes, with the option as to the larger one, was "The consummation and settlement in full" for the Welch lot, "Sold by the parties of the first part to the party of the second part." Against this written evidence of sale, it is as impossible to maintain a theory of exchange, as it is to supply lacking words of sale of the Westmoreland lot. As to that lot, therefore, the contract provided nothing more than an offer on the part of the plaintiffs, to accept a conveyance thereof, in lieu of payment of the note, which, to constitute a contract, had to be accepted at least. It also extended to the defendant a correlative option of sale of the lot, but this was not a contract of sale, binding him to convey it or the other party to accept it.

The manifest character of the contract, thus disclosed, renders inapplicable all of the authorities relied upon in the argument for the appellant, declaring time not to be of the essence of a contract of sale, unless made so by its terms or conditions. They are wholly inapplicable, because there is no contract of sale of the defendant's lot. In mere options, time is always material. If the period during which it was agreed the offer of purchase or sale shall continue, is allowed to ex-

pire, without acceptance and compliance with the conditions. thereof, the option itself terminates and the right of election ceases. *Johns* v. *Elkins,* 63 W. Va. 158; *Fulton* v. *Messenger,* 61 W. Va. 477; *Pollock* v. *Brookover,* 60 W. Va. 75. Such cases do not fall within the jurisdiction of courts of equity to enforce specific performance, because there is no contract of sale to perform; nor within their jurisdiction to relieve from penalties, for there is neither a penalty nor a forfeiture.

If the written contract specifically limits the time of the option, the period so fixed is controlling and must be observed. If it does not provide a time limit, the parties are presumed to have intended the offer to stand for a reasonable time, and the law enforces the presumption. The terms of the optional provision clearly express intent to limit the life of the offer to the date of the maturity of the note. It says the note is to be paid at the option of the party of the second part, at maturity, or to be off-set by delivery of a deed and an abstract of title. That no further negotiation between the parties was contemplated, is indicated by the provision for delivery of the deed to the First National Bank of Welch, at which the note was made payable. As both the note and the contract required payment of the $1,000.00, at maturity of the former, and only one means of avoidance of payment was provided, namely, conveyance of the lot and delivery of the abstract of title, it must necessarily have been the intention of both parties that the option should be exercised on or before the maturity of the note. After that date, the defendant was bound to pay the money, if he had not availed himself of the option. Being so bound, he could not thereafter consistently be free in the matter. The two situations were incompatible. This conclusion harmonizes with views set forth by Judge Moncure, in *Butcher* v. *Carlile,* 12 Gratt. 520. The bond sued on in that case bound the obligor to pay to the obligee, on or before a certain date, a certain sum of money, with interest, and then provided that said sum might "be discharged in notes or bonds due on good solvent men residing in the county." After having reviewed numerous cases involving similar obligations, he said: "I think this is clearly an obligation for the payment of a sum of money, with a

mere privilege to the obligor to discharge it in notes or bonds
of the description mentioned, on or before the day on which
it became payable; and having failed to discharge it, he is lia-
ble to an action of debt therefor, according to the principles
before stated.'' That bond involved an option similar to the
one given by this contract, and the court reached the con-
clusion that it expired when the bond became due and pay-
able. For other cases in which similar contracts are interpret-
ed in the same way, see 11, Va. & W. Va. Ency. Dig. p. 25.

As to whether the defendant made his election before the
note became due, there is sharp conflict in the testimony.
Against his unsupported word, stands the positive testimony
of one of the plaintiffs and the assistant cashier of the bank.
This preponderance in the number of witnesses, in favor of
the finding of the trial court, obviously precludes disturbance
thereof by this court.

But, if the circuit court was wrong, in its conclusion as
to the time of the election, the defendant did not offer to com-
ply with one of the conditions of the offer, on or before the
maturity of the note, nor was he able to do so at that time.
He was no doubt able to execute and deliver a deed carrying
a good title, but he did not have the abstract. To avoid pay-
ment of the note, it was necessary for him not only to elect,
but also to perform. *Pollock* v. *Brookover,* 60 W. Va. 75.

Though the defendant's right under the contract, respect-
ing disposition of his own lot, did not rise to the dignity of a
contract of sale and was a mere option, it was a substantial
right founded upon a valuable consideration, wherefore it
could not be rightfully disregarded or obstructed by the plain-
tiffs. *Rease* v. *Kittle,* 56 W. Va. 269; *Fulton* v. *Messenger,*
61 W. Va. 477, 481; *Pollock* v. *Brookover,* 60 W. Va. 75; 9
Cyc. 287. Options created by sealed instruments and those
founded upon valuable considerations are irrevocable. *Weav-
er* v. *Burr,* 31 W. Va. 736, 743; 9 Cyc. 286, 287; *Rease* v.
*Kittle,* cited. The option involved here is supported by a val-
uable consideration and evidenced by a sealed instrument.

The reasoning upon which such right is held to be substan-
tial and irrevocable at any time within the life thereof, nec-
essarily sustains and upholds it against obstruction and ef-

forts at indirect avoidance, on the part of the optionor. If, therefore, the plaintiffs omitted to place themselves in a position to demand performance on the part of the defendant, at the date of the maturity of the note, their omission excused performance on his part at that time and necessarily extended the life of the option. It is urged that they did fail in this respect, by not placing their deed in the bank for delivery at the maturity of the note. It was clearly incumbent upon them to do that. The contract was not evidenced by the note alone, but by the instrument of which the note was made a part. In other words, the real contract was one of dependent covenants. Non-payment of the note was excused until the deed for the Welch lot was delivered or tendered. Non-delivery thereof, on the agreed date, would not destroy the contract, because time was not made an essential element thereof. The effect of such dereliction would be an extension of the time of performance, for a party cannot be heard to complain of the consequences of his own act nor permitted to have advantage of his own wrong. *Coal & Coke Co.* v. *Coal & Coke Corp. Co.*, 67 W. Va. 503; *Gross* v. *Lewis*, 54 W. Va. 433; *Kern* v. *Zigler*, 13 W. Va. 716. It would also extend the life of the option, because the contract, fairly and reasonably interpreted, made the date of performance the time limit of the option. Without a tender of the deed of the plaintiffs, the defendant was not bound to pay the note, nor could he obtain his full right by the exercise of his option. On payment of the note, he was entitled to the deed. On the exercise of his option by delivery of his deed for the Westmoreland lot, he was likewise entitled to the deed of the plaintiffs. Therefore, if the latter was not in the bank for delivery at the date of maturity of the note, the optional right of the defendant was necessarily extended.

Sifted and analyzed in the light of the rules governing it, the evidence pertaining to the question whether the plaintiffs left their deed with the bank for delivery to the defendant, before the note became due, is wholly insufficient to establish the fact. The plaintiffs had the burden of this issue and have not sustained it. The defendant swears the assistant cashier of the bank, who was also the agent of the plaintiffs, gave a

negative response to his inquiry as to whether the deed had
been left with him. One of the plaintiffs swears it was exe-
cuted and acknowledged before a certain notary and deposited
with the assistant cashier of the bank. As it was not redeliv-
ered to him with the note, he explains that it was, in some way,
misplaced at the bank. If it was delivered to the bank or the
assistant cashier and misplaced or lost, the testimony of that
officer as to the transaction was important and could have
been had, but the plaintiffs made no effort to prove by him,
either the delivery of the deed or the loss thereof. Nor was
the testimony of the notary public before whom acknowledg-
ment thereof is claimed, offered or introduced. Though the
plaintiffs put the former on the witness stand, they never ask-
ed him if the deed had been delivered to him, nor whether he
had made any search for it in the bank. He does not deny the
words imputed to him by the defendant. His only reply is
that the conversation between them, whatever it was, took
place after the maturity of the note. One rather vague an-
swer of his might possibly, though not fairly, be interpreted
as a denial of all the defendant imputes to him. He admits
having had some conversation with the defendant, and he
neither affirms nor denies in specific terms, the delivery of a
deed to him, by the plaintiffs. On cross-examination, he was
made to say that he had formerly testified that the plaintiffs
had not delivered the deed to him, though he, perhaps, did
not intend to make this statement. If a party having it within
his power to produce evidence by which he can render a
doubtful point certain, fails to produce it, the legal presump-
tion is that, if he had produced the evidence, it would have
been against him. *Knight* v. *Capito*, 23 W. Va. 639; *Heffle-
bower* v. *Detrick*, 27 W. Va. 16; *Bindly* v. *Martin*, 28 W. Va.
775; *Union Trust Co.* v. *McClellan*, 40 W. Va. 405; *Webb* v.
*Bailey*, 41 W. Va. 463; *Stout* v. *Sands*, 56 W. Va. 663.

The liens on the Welch lot constituted another obstacle to
the exercise of defendant's option, but not to his payment of
the note. Plaintiffs had authorized their agent to pay off the
liens, out of the purchase money, and the creditors had em-
powered the same man to release the liens, on payment, but
the exercise of defendant's option, conveyance of his lot in

lieu of payment, would have provided no money with which to discharge the liens. One of the plaintiffs says he had arranged with the assistant cashier of the bank to have the liens charged to his account. The defendant says this man told him he had no instructions from the plaintiffs. Though examined as a witness, he was not asked whether he had agreed to charge the amount of the liens to plaintiff's account. Presumptively he would have answered in the negative, if the question had been propounded.

A merely formal defect in the abstract of title furnished by the defendant, was relied upon in resistance of his prayer for specific performance in accordance with his election under the contract. As no defect in the title of the Westmoreland lot is pointed out, and the abstract is sufficient in all substantial respects, the defect complained of does not bar his right to relief. The abstract was not rejected on account thereof. When it was tendered, the plaintiffs denied the right of the defendant to exercise the option, on the ground of expiration thereof, and have continued to do so. The only defect pointed out is the lack of an affidavit of the abstractor. As the title is completely evidenced by matter of record, there is obviously no occasion for an affidavit. It would add nothing to the value of the instrument, and no authority has been cited or found which requires such an abstract to be verified by an affidavit.

Time not being an essential element of the contract of sale of the Welch lot, the defendant was not discharged from the obligation thereof by the defaults of the plaintiffs above mentioned. They have lodged a deed and a release of the liens in the papers of the cause, and there is no longer any obstacle to the enforcement of the contract and exercise of the option.

Upon these principles and conclusions, the decree complained of will be reversed and the cause remanded with directions to cancel the note in controversy, upon the filing with the papers in the cause, of a general warranty deed conveying the Westmoreland lot to the plaintiffs, executed by the defendant and his wife, which together with the abstract of title, the plaintiffs may withdraw from the papers in the cause.

*Reversed and remanded, with directions.*